[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR ORDER, POSTJUDGMENT DATED JULY 23, 2001 (#131); PLAINTIFF'S MOTION TO RE-OPEN AND MODIFY JUDGMENT DATED JULY 30, 2002 (#134)
The above motions came before the court on August 8th, 9th and 13th of 2002 when the parties appeared with counsel and offered their testimony and that of their witnesses together with the introduction of documentary evidence. The defendant sought to prevent the plaintiff from moving from Simsbury to Glastonbury with the parties' two minor children. The plaintiff sought to relocate to Glastonbury with the children and, at the time of the hearing, had already moved with her present husband.
The following procedural history is relevant. The parties married on July 10, 1982. Two children were born to the plaintiff, issue of the marriage, to wit: Alex born November 8, 1988 and Alyssa born March 24, 1992. The marital residence of the parties since January of 1993 was 17 Echo Lane in Simsbury. After commencement of this action in October of 1998 the plaintiff left the marital residence and moved to 28 Massoco Street in Simsbury. The parties shared the parenting of the children and on August 4, 1999 their marriage was dissolved. Both parents completed the required Parenting Education Classes and entered into a Separation Agreement dated August 4, 1999 the terms of which were incorporated into the Judgment. Said Agreement provided inter alia for joint legal custody of the two minor children with a shared parenting plan. There was no designation of either parent as being the custodial parent nor was there any reference about the effect of a move by either party.
The plaintiff subsequently married Robert Paszek on June 3, 2000. Both parties continued to live in Simsbury and until July of 2001 the parenting plan worked out well. The plaintiff and her new husband had a child Christopher born on November 29, 2000. The plaintiff and Mr. Paszek testified credibly that they wanted to remain in Simsbury or in the Farmington Valley and continue with the then existing parenting plan. However, they were unable to find a house in Simsbury they could afford which would accommodate themselves and the three children. They described CT Page 3487 their house search efforts and offered the testimony of Paul Banville, a real estate broker who supported their claim on affordable housing in their particular situation.
The plaintiff called Anne M. Phillips, Ph.D., the court-appointed evaluator to introduce into evidence her report (Plaintiff's 3) and testimony relating thereto. Counsel for the parties and the Attorney for the minor children conducted extensive voir dire, not as to her credentials or expertise but as to a meeting she had with the plaintiff's counsel and the Attorney for the minor children without the attendance or knowledge of the defendant's counsel. The meeting took place after the report had been prepared. The court was satisfied that the meeting did not have any effect on Doctor Phillips' testimony. Although there are guidelines in Juvenile Court concerning such matters there are only ill-defined customs concerning Family Court.
After extensive testimony Doctor Phillips recommended that the parties have a split custody arrangement, i.e., Alex to live with the defendant father and Alyssa to live with plaintiff mother together with extensive contacts between the parties and their children and between the children. The plaintiff and the Attorney for the minor children agreed with the recommendations but the defendant did not. Upon careful consideration of the testimony and the documentary evidence the court agrees with the recommendations of Doctor Phillips for the reasons hereinafter set forth.
Alexis a boy of 14 years of age and Alyssa is a girl 10 years of age. Alex is very close to his father and Alyssa is very close to her mother. The differences in their ages and sex entered into the many factors for split custody. Both children love their parents and vice versa. Alex closely identifies with his father and Alyssa with her mother. The emotional and physical problems confronting the children go well beyond the usual sibling rivalry. The children essentially go their separate ways and have their own circle of friends. Alex has been in therapy for extended periods of time. He has difficulty in adhering to his mother's organized, structured, goal-oriented requirements. He enjoys the more relaxed posture of the father. Alyssa, on the other hand does well with her mother's outlook on life. She also feels that she is overshadowed by Alex when she is with him and her father. Alex is dominant and she is subservient.
There have been episodes of physical abuse by the plaintiff with respect to her parenting of Alex. Although not a major problem she should undergo therapy to deal with that issue. CT Page 3488
The continuation of the present shared parenting plan has had a detrimental effect upon the children because of the transportation issue and the greater distance between the homes of the parties. A split custody arrangement will help alleviate the time the children have to spend traveling between the parties and to their respective schools.
A matter of disagreement concerned a meeting the parties had on June 2, 2001. The plaintiff and her new husband were left with the impression that the defendant was in agreement with a split custody arrangement whereas the defendant indicated he would "consider it." The court makes no finding as to the credibility of either party's understanding of the meeting.
The court has carefully considered the best interests of the children and, although not generally preferred, a split custody arrangement in this particular case is appropriate.
Orders were entered by the court on August 20, 2002.
 BY THE COURT, John R. Caruso, J.
CT Page 3489